1

2

3

4

5

6

7

8

9

10

11

12

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MARC W. SHETTLESWORTH, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **DEFENDANT UMPQUA BANK'S NOTICE OF REMOVAL** |
| v. | Removal from the Superior Court of the State of Washington for the County of Pierce, Case No. 23-2-09514-1 |
| UMPQUA BANK, | |
| Defendant. | |

13   TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN

14   DISTRICT OF WASHINGTON, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

15   Defendant Umpqua Bank, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of

16   2005 or "CAFA"), 1441, and 1446, hereby files this Notice of Removal of this action from the

17
18   Superior Court for the State of Washington in and for Pierce County, to the United States District

19   Court for the Western District of Washington, and in support thereof states as follows:

20   **I.    STATEMENT OF JURISDICTION**

21       1.    This Court has jurisdiction over Plaintiff's claims pursuant to CAFA, which

22   amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if:

23   (1) the proposed class consists of at least 100 members; (2) the amount in controversy exceeds

24
25   $5,000,000, exclusive of interest and costs; and (3) one member of the proposed class is a citizen

26   of a state different from any defendant. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of

such actions pursuant to 28 U.S.C. §§ 1441(a) and 1446. As demonstrated below, this action meets

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 1



all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## II.    PLEADINGS, PROCESS, AND ORDERS

2.    Plaintiff Marc W. Shettlesworth ("Plaintiff") commenced a civil action, styled *Marc W. Shettlesworth, individually and on behalf of all other similarly situated v. Umpqua Bank* in the Superior Court for the State of Washington in and for Pierce County, by filing a Class Action Complaint on September 6, 2023, Case No. 23-2-09514-1 (the "State Court Action").

3.    The Summons and a copy of Plaintiff's Complaint were served on Umpqua Bank on September 21, 2023. Copies of the Case Cover Sheet, Order Assigning the Case to Judicial Department, Summons, Note for Motion Docket, Stipulated Motion to Extend Time to Answer, Notice of Appearance, and Affidavit of Service are attached to this Notice as **Exhibit A**. A copy of the Complaint is included with this Notice as **Attachment 1** pursuant to LCR 101(a)(b)(1), and the Civil Cover Sheet is included as **Attachment 2** pursuant to LCR 101(a)(b)(4). Umpqua is informed and believes that the aforementioned documents and exhibits include all of the process, pleadings and orders on file in the State Court Action. *See* 28 U.S.C. § 1446(a).

4.    As set forth in the Complaint, Plaintiff brings claims for negligence, negligence per se, breach of implied contract, unjust enrichment, declaratory and injunctive relief, and alleged violation of the Washington Consumer Protection Act based on a data incident involving Umpqua Bank's file transfer vendor, discovered in June of 2023 (the "Incident"). (Compl. ¶¶ 3, 138-206.)

5.    In addition to his individual claims, Plaintiff proports to represent a class of "All United States residents whose Private Information was accessed or acquired during the data breach event that Defendant has stated commenced on or about May 27-31, 2023." (Compl. ¶ 121.)

6.    By filing this notice of removal, Umpqua Bank does not intend to waive, and hereby reserves, any objections as to venue, the legal sufficiency of claims alleged in the Complaint, and

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 2

1  all other defenses. Umpqua Bank reserves the right to supplement and amend this notice of

2  removal.

3  **III.    JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT**

4          7.      Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have

5  original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value

6  of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a

7  class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2);

8  (d)(6) (explaining claims may be aggregated).

9          8.      Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C.

10 § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff

11 classes, in the aggregate, is 100 or more. *See* 28 U.S.C. § 1332(d)(5).

12         9.      This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d),

13 and this action may be removed by Umpqua Bank pursuant to the provisions of 28 U.S.C.

14 § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount

15 in controversy exceeds $5,000,000, and there is diversity between at least one proposed class

16 member and the defendant.

17        10.      Venue lies in the United States District Court for the Western District of

18 Washington, pursuant to 28 U.S.C. § 84(b), 1441, and 1446(a). This action was originally brought

19 in the Pierce County Superior Court, which is located within the Western District of Washington.

20 Venue is proper with this Court because it is the "district and division embracing the place where

21 such action is pending." 28 U.S.C. § 1441(a).

22        **A.      The Putative Class Contains At Least 100 Members**

23        11.      Plaintiff brought this action on behalf of himself and all others similarly situated as

24 a class action pursuant to Washington Superior Court Civil Rule 23, which authorizes an action to

be brought by one or more representative persons as a class action. (Compl. ¶ 120.)  Plaintiff seeks

to represent "All United States residents whose Private Information was accessed or acquired

during the data breach event that Defendant has stated commenced on or about May 27-31, 2023."

(Compl. ¶ 121.)

12.    Plaintiff alleges that the Putative Class Members are "so numerous that joinder of

all members is impracticable." (*Id.* ¶ 123.)

13.    Plaintiff alleges the putative class consists of "over 429,252 Class Members." (*Id.*

¶ 7)

**B.    There Is Diversity of Citizenship Between At Least One Proposed Class Member and Umpqua Bank.**

14.    CAFA's minimal diversity requirement is satisfied when "any member of a class

of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C §§ 1332(d)(2)(A);

*Armstrong v. Argosy Educ. Grp. Inc.*, No. C14-852 MJP, 2014 WL 12674280, at *2 (W.D. Wash.

Aug. 5, 2014) (explaining that "CAFA has no 'complete diversity' or forum defendant rule, but

rather a 'minimal diversity' requirement which is satisfied wherever a single member of the

proposed class is from a different state than any defendant"). Complete diversity of citizenship

exists here because Plaintiff and Umpqua Bank are citizens of different states.

15.    Plaintiff's Citizenship. For diversity purposes, a person is a "citizen" of the state in

which her or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir.

1983).  A person's domicile is the place he or she resides with the intention to remain, or to which

he or she intends to return.  *See Kanter v. Warner-Lambert Clew & Moss*, 797 F.2d 747, 749-50

(9th Cir. 1986).  Plaintiff avers that, at all relevant times, he was and is domiciled in Washington.

(Compl. ¶ 24.)   Accordingly, Plaintiff is a citizen of the State of Washington for purposes of

removal. *See, e.g., Mondragon v. Capital One Auto Finance*, 776 F.3d 880, 885-86 (9th Cir. 2013)

1  (holding that, in connection with removal to federal court, a person's continuing domicile in a state

2  establishes citizenship "unless rebutted with sufficient evidence of change").

3      16.    <u>Defendant's Citizenship.</u>  Under § 1332(d)(10), "an unincorporated association

4  shall be deemed a citizen of the State where it has its principal place of business and the State

5  under whose laws it is organized." *See also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676,

6  684 (9th Cir. 2006). Defendant is an Oregon state-chartered bank with its principal place of

7  business in Oregon.[1]  Accordingly, Defendant is a citizen of Oregon.[2]

8
9  **C.    The Alleged Amount in Controversy Exceeds $5,000,000**

10      17.    Under CAFA, the articulated claims of all class members are aggregated to

11  determine if the amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).

12  Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the

13  matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint

14  of the defendant, and regardless of the type of relief sought (*e.g.,* damages, injunctive relief, or

15  declaratory relief)."  Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action

16  Fairness Act of 2005*, 42 (Comm. Print 2005).  The Senate Judiciary Committee's Report on the

17  final version of CAFA also makes clear that any doubts regarding the maintenance of interstate

18  class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 43

19  ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over

20  class actions.  Its provisions should be read broadly, with a strong preference that interstate class

---

[1] Paragraph 25 of the Complaint, however, erroneously pleads the citizenship of "Defendant Whitworth University" – rather than Defendant Umpqua Bank. (Compl. ¶ 25.)

[2] Umpqua Bank reserves the right to present additional evidentiary support should Plaintiff challenge federal jurisdiction. *See Dart Cherokee*, 574 U.S. at 89 (noting that "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation" that the amount in controversy exceeds the jurisdictional threshold).

actions should be heard in a federal court if properly removed by any defendant.”).

18.    When a plaintiff fails to plead a specific dollar amount of damages and the amount in controversy is not necessarily “facially apparent” from the complaint, “the court may consider facts in the removal petition” to determine the amount at issue. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). “[A] defendant’s notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.” *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a “reasonable” “chain of reasoning” that is based on “reasonable” “assumptions.” *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 959 (9th Cir. 2020) (“[I]n Arias we held that a removing defendant’s notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements,” quotations and citations omitted). That is because “[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant’s liability.” *Lewis v. Verizon Commc’ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). “[W]hen a defendant seeks federal-court adjudication, the defendant’s amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.” *Dart Cherokee*, 574 U.S. at 87.

19.    Umpqua Bank denies Plaintiff’s allegations of liability, fault, or other wrongdoing and that Plaintiff has suffered any cognizable harm. Umpqua Bank intends to vigorously defend against all of Plaintiff’s causes of action.  Nevertheless, without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged Putative Class Members and the causes of action cited, the aggregate amount in controversy

1

presented by this case exceeds $5,000,000.[3]

2

20.     The Complaint alleges Plaintiff and the class members have suffered injuries

3

including "out of pocket costs for, e.g., purchasing credit monitoring services." (Compl. ¶¶ 20, 110

4

(same); 116 (same); 147 (same); 188 (same); 18 ("Class Members must now and in the future

5

closely monitor their financial accounts to guard against identity theft").) Equifax advertises that

6

its credit monitoring services cost between $59.40 per year for basic plans to $239.40 per year for

7

premium plans. *Compare our Value Products*, EQUIFAX (last visited Oct. 19, 2023),

8
9

https://www.equifax.com/personal/products/value-product-comparison/ ($4.95 per month for

10

Equifax's Credit Monitor program); *Compare our Premium Products*, EQUIFAX (last visited Oct.

11

19, 2023), https://www.equifax.com/personal/products/credit/monitoring-product-comparison/

12

($19.95 per month for Equifax Complete Premier program). Accordingly, even using the low end

13

of these price ranges, three *months* of credit monitoring, alone, times the pleaded class size

14

(429,525 individuals), would put the amount in controversy at $6,374,392.20 (($4.95 x 3) x

15
16

429,525). Courts have found this sufficient to establish the CAFA amount in controversy in similar

17

data incident cases. *Copple v. Arthur J. Gallegher & Co.*, No. C22-0116-LK-SKV, 2022 WL

18

3357865, at *7 (W.D. Wash. Aug. 2, 2022) (denying motion to remand).[4]

19

20
21

[3] Defendant provides these calculations solely to demonstrate that the amount in controversy in this case exceeds the jurisdictional minimum.  Defendant makes no admission of any liability or damages with respect to any aspect of this case.

22

[4] In addition, Plaintiff claims treble damages of up to $25,000 per Class Member and attorneys' fees under the Washington Consumer Protection Act. (Compl. ¶ 149.) The Court may consider both when determining the amount in controversy. *Lewis v. Hartford Cas. Ins. Co.*, No. 3:15-CV-05275- RBL, 2015 WL 4430971, at *2 (W.D. Wash. July 20, 2015) ("When the Plaintiff has "put treble damages at issue, . . . a reasonable estimate of those damages must be included in the amount in controversy calculus."); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys'

23
24
25
26

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 7

### III.    TIMELINESS OF REMOVAL

21.    This action has not previously been removed to federal court.

22.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Umpqua Bank has filed this Notice of Removal within 30 days of September 21, 2023, the date on which Plaintiff served Umpqua Bank.

### IV.    NOTICE TO PLAINTIFF

23.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Superior Court for the State of Washington in and for the County of Pierce.

**WHEREFORE**, for all of the foregoing reasons, Umpqua Bank hereby removes the State Court Action now pending in the Superior Court for the State of Washington in and for the County of Pierce, to the United States District Court for the Western District of Washington.

DATED this 20th day of October, 2023.

---

fees may be included when calculating the amount in controversy). If a mere 201 individuals received the statutory maximum, the jurisdictional threshold would be met.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POLSINELLI PC

By: */s/ Jessica M. Andrade*
        Jessica M. Andrade, WSBA #39297
        1000 2nd Avenue, Suite 3500
        Seattle, WA 98104
        Telephone: (206) 393-5400
        Facsimile: (206) 393-5401
        Email: jessica.andrade@polsinelli.com

        John C. Cleary (*pro hac vice* forthcoming)
        600 Third Avenue, 42nd Floor
        New York, NY 10016
        Telephone: (212) 413-2837
        Facsimile: (212) 684-0197
        Email: john.cleary@polsinelli.com

*Attorneys for Defendant Umpqua Bank*

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 9

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify under penalty of perjury under the laws of the State of Washington and the

United States of America that on the date below, I electronically filed the foregoing **Notice of**

4

**Removal** with the Clerk of the Court using the CM/ECF system, which will send notification to

5

the following counsel of record:

6

7

Douglas H. Sanders
**MILBERG COLEMAN BRYSON**

8

**PHILLIPS GROSSMAN, PLLC**
1311 Ponce de Leon Ave.

9

San Juan, PR 00907

10

dsanders@milberg.com

11

Gary M. Klinger
**MILBERG COLEMAN BRYSON**

12

**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100

13

Chicago, IL 60606

14

gklinger@milberg.com

15

Bryan L. Bleichner
Philip Krzeski

16

**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700

17

Minneapolis, MN 55401

18

bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

19

*Attorneys for Plaintiff*

20

21

DATED this 20th day of October, 2023, at Seattle, Washington.

22

23

*/s/ Jessica M. Andrade*
Jessica M. Andrade, WSBA #39297

24

POLSINELLI PC
jessica.andrade@polsinelli.com

25

26

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 10